IN THE CIRCUIT COURT FOR THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

CIRCLE DE LLC, a Montana limited
liability corporation; THOMAS DEAN
and BETTY JO DEAN,

    Plaintiffs

-vs-

AMERICAN MODERN HOME
INSURANCE COMPANY, a foreign
corporation,

    Defendant.

_____/

CASE NO. 53-2010 CA-00 6144 -0000-00
Sec. 15

## COMPLAINT

Plaintiffs, CIRCLE DE LLC, THOMAS DEAN AND BETTY JO DEAN, sue Defendant AMERICAN MODERN HOME INSURANCE COMPANY and allege:

1. This is an action for damages that exceed $15,000.00.

2. Plaintiffs bring this action pursuant to §624.155, *Fla. Stat.*, for violations of §626.9541, *Fla. Stat.*, and for Defendant's failure to attempt in good faith to settle claims under an insurance policy pursuant to §624.155(1)(b)1.

3. Plaintiffs, THOMAS DEAN and BETTY JO DEAN, are residents of Polk County, Florida.

4. Plaintiff, CIRCLE DE LLC, is a Montana limited liability corporation managed by managers. The only managers and officers of Plaintiff, CIRCLE DE LLC, are Plaintiffs, THOMAS DEAN and BETTY JO DEAN, who are residents of Polk County, Florida.

5. Defendant, AMERICAN MODERN HOME INSURANCE COMPANY, is an Ohio corporation registered and doing business in Florida.

6. Defendant issued an insurance policy, number #0770045369953, which insured Plaintiffs against certain risks of loss to a 2005 Gulf Stream Friendship G7, VIN #4UZAAHDC75CU88188, motor coach which served as Plaintiffs THOMAS DEAN and BETTY JO DEAN's primary residence.

7. On or around June 3, 2007, while Plaintiffs' insurance policy was in full force and effect, the holding tank in the subject motor coach overflowed, causing water to overflow inside the motor coach. Plaintiff, THOMAS DEAN, attempted to clean the affected area with a wet vacuum. When he awoke the next morning, additional water appeared through the shower drain. This all resulted in substantial damage to the coach, affecting the carpeting, plywood slide/extension floor, ceramic tile, and structure wood sub-floor, as well as furniture and cabinetry located directly on the floor.

8. On or around June 4, 2007, Plaintiffs notified Defendant of the damage.

9. Defendant sent an adjuster to perform an assessment of the damage on or around June 5, 2007. Defendant's adjuster engaged the services of ServiceMaster of Polk County (a water extraction company) to extract the water and clean the affected areas.

10. On or around June 7, 2007, ServiceMaster of Polk County performed the requisite cleaning. Because Plaintiff, THOMAS DEAN, acknowledged that he occasionally urinated in the shower, ServiceMaster categorized the water as highly contaminated (Category III).

11. ServiceMaster recommended that all affected areas, including the hardwood floors, carpet, padding, vanity, shower, wet walls, and sub floors, be removed and replaced. Based on the evaluation by Service Master's operation manager that it was not safe to remain living in the coach, Plaintiffs vacated it.

12. Shortly thereafter, the coach was transported to CC Works, Inc. d/b/a as Creative Coach Collision Repair and Design Center. On or around June 19, 2007, Creative Coach sent Defendant a letter in which it estimated that repairs would cost approximately $115,560.00, stated that it would consider the coach to be a constructive total loss, and notified Defendant that it would not attempt repairs because it would be unsafe to do so because of the contaminated water.

13. Plaintiffs later received a letter from Defendant dated July 5, 2007, and its repair estimate dated June 28, 2007, which estimated the damage, after subtracting the $750.00 deductible, to be in the amount of Three Thousand Seventy and 30/100 Dollars ($3,070.30). Plaintiffs received a check dated July 6th, 2007 for that amount.

14. On or around July 11, 2007, Defendant hired Environment Safety & Health to perform an environmental assessment of the conditions inside the subject motor coach. Despite Plaintiffs' repeated requests for a copy of this report, Defendant did not reveal the results of this report until forced to do in response to Plaintiffs' request for production in their breach of contract action.

15. In the interim, because Plaintiffs had no other alternative, they engaged the services of Adviron Environmental Systems, Inc. on or around July 26, 2007, to assess the environmental condition of the subject motor coach and recommend

possible repairs. In its August 9, 2007, report, Adviron noted the existence of fungal and mold issues, and recommended that certain extensive remedial actions be taken.

16. Relying on the advice from ServiceMaster and the Adviron report, Plaintiffs determined that the motor home was a constructive total loss and made a corresponding demand for settlement upon Defendant.

17. When Defendant failed to pay the additional damages claim and failed to offer any reasoning for its failure to do so, Plaintiffs filed suit for breach of contract against Defendant on or around March 18, 2008.

18. Prior to the filing of lawsuit, Defendant made no attempts to negotiate with Plaintiffs to settle their claim or demand Appraisal under the terms of its insurance policy - despite the fact that the ServiceMaster report, the Creative Coach report, and the Adviron report determined that damages to the subject motor coach were significantly higher than the estimate prepared by Defendant's adjuster.

19. Only after Plaintiffs filed suit, did Defendant demand appraisal under the terms of its insurance policy.

20. Following Defendant's demand for appraisal, the parties agreed that the action would be abated for a 90 day period, ending on November 1, 2008, during which time the appraisal process was to be completed. As part of the appraisal process, each party was to select an appraiser who would select an umpire and separately determine the actual cash value and amount of loss, and if the appraisers were unable to agree, they would submit their findings to the umpire. If the appraisers were unable to agree on an umpire, the court would appoint one.

21. During the 90 day abatement period, Defendant sought to repeatedly delay the appraisal process. Defendant's appraiser failed to complete his report within the 90 day period, and when he finally submitted his first estimate, he based his findings on the incorrect assumption that the claim was predicated on the overflow of the black water tank, despite the fact that Plaintiffs' claim was that the gray water tank overflowed.

22. Defendant caused further delay in resolution of the claim by its appraiser's selection of umpires located outside Polk County, and its refusal to agree to the appointment of any of the umpires selected by Plaintiffs' appraiser. Because the appraisers could not agree, the court was forced to select an umpire.

23. Following the appraisal meeting with the court appointed umpire on June 5, 2009, Plaintiffs were awarded $38,483.50, more than ten times the amount of the estimate prepared by Defendant's adjuster. By paying the appraisal award, Defendant confessed judgment.

24. Under the circumstances set forth above, a good faith consideration of the interests of Plaintiffs required that Defendant settle the claim promptly, including before demanding appraisal under the terms of its insurance policy, before forcing its insured to file suit.

25. Defendant did not attempt in good faith to promptly settle the claim, when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward Plaintiffs and with due regard for Plaintiffs' interests, as required by §624.155(1)(b)1, *Fla. Stat.*

26. Defendant failed to fully investigate and nowledge the extent of damage sustained to the subject motor coach. This resul in part, from Defendant's failure to create, adopt and implement standards for the pr r investigation of claims.

27. Pursuant to §624.155, *Fla. Stat.*, Plaintiffs bmitted its Civil Remedy Notice of Insurer Violation to the Department of Insuranc or around May 14, 2008, detailing the bad faith actions of Defendant.

28. Defendant was provided with a copy of the C Remedy Notice but failed to pay damages or correct the circumstances giving rise to violations asserted in this complaint within 60 days from the time notice of violatio §624.155, *Fla. Stat.*, was filed with the Department of Insurance.

29. As a result of Defendant's bad faith acti Plaintiffs have suffered damages, including but not limited to the loss of the use o e subject motor coach for more than two (2) years.

30. As a direct and proximate result of the of D dant's bad faith, Plaintiffs employed the firm Frost van den Boom & Smith, P.A help them recover their damages and have agreed to pay them reasonable attorn fees for their services.

WHEREFORE, Plaintiffs request judgment agai Defendant for damages, together with reasonable attorney fees pursuant to §624. ), *Fla. Stat.*, costs of suit, and any other and further relief as the court may deem pr

DEMAND FOR JURY TR[IAL]

Plaintiffs, CIRCLE DE LLC, THOMAS DEAN and BE[TTY] JO DEAN, demand a trial by jury on all issues so triable.

FROST VAN DE[N BOOM]
& SMITH, P.A.

By:_____
Bradford L. [Ste]wart
Florida Bar [#]5760
P.O. Box 2[1]
Bartow, FL [338]31-2188
Phone: 8[63-5]33-0314
Facsimile: [863]-533-8985
Email: bs[tewar]t@fvslaw.com